This morning, number 15-1738, Lincoln v. Warden of Smithfield SCI, Ms. Sofranti and Mr. Ranjan or Ranjan? Oh, Ranjan. Ranjan, that's what, okay, that's what I thought. Thank you. Good morning, Your Honors. May it please the Court, my name is Sue Sofranti. I represent the appellants in the present case. I'd like to reserve three minutes for rebuttal, if I may. That's fine. Thank you. I mean, obviously, you only had 13 days to try to get something done. You go to the Superior Court, didn't act real quickly. So you go to the Commonwealth Court on the 22nd. Court of Common Pleas. Court of Common Pleas, excuse me, I'm sorry. Court of Common Pleas. That's the Lerner Court. Judge Lerner, correct. And so, what was the decision process saying, okay, Superior Court's not acting, we're not sure what to do, it's getting close to Christmas, we're running out of time. What makes you decide to go to the Court of Common Pleas? Absolutely. What happened in this case was, we had a motion from my opponent already, before the Superior Court, which had been stayed pending the Third Circuit appeal. So it seemed most expedient to simply go back to the Superior Court and say, there's no reason to stay anymore, let's continue. We hoped they would do that expeditiously. They did not. So we had two choices at that point. To whom do you go? Yeah. Excuse me, who do you go to? Yeah, who do you go to? In the Superior Court. We merely file a motion to the panel. That's our only access to the panel in the Superior Court. You just filed something with the Superior Court Prothonotary. Correct. And I know that one of our attorneys actually called the clerk in the Superior Court and inquired if there was some other way to reach out to the court. This was right before Christmas. Right. We knew there was going to be an issue. We had a lot of anxiety about that. I'll be Possibly, Your Honor. Just maybe. So we did call the clerk's office to see if there was something we didn't know about. I know that this court, during the same time period, had issued an order. It wasn't an order. It was a letter to practicing attorneys before this court. I believe it came out around the time of this court's opinion. And it said, if you need an emergency motion to the Third Circuit, you're going to need to call. And here's a phone number, and you better let us know in advance, because getting a panel together right now is going to be a challenge. So this court, fortunately, for practitioners before it, does have a method to get to the panel. The Superior Court, unfortunately, does not have a similar protocol. So when we looked at the situation, we knew we had no control over that situation. So we could have gone to Judge Shapiro back in the District Court and asked for more time. But we asked ourselves at that point the question we thought Judge Shapiro would ask us, which is, have you done everything you can to get this reinstatement? And once we thought about it, we realized we actually had not at that point. We typically, when there's a reinstatement of a direct appeal, you go to the Court of Common Pleas. So at that point, we decided that it was most prudent. It was now the 22nd of December, and we had three days left. So we wanted to go. So we went to the Court of Common Pleas, to the calendar judge, to Judge Lerner, and we said, here's an order from the Third Circuit. We need to reinstate this appeal. Can you take that action? Just dumb question time. Would the Superior Court get its nose out of joint if the Court of Common Pleas is, in effect, acting on their behalf? No, Your Honor. In fact, I think we talked a little bit about the jurisdictional role here, 1701. It reads to me, actually, as if it allows for simultaneous jurisdiction here. That if there is an order of the Court, they can take action. The Superior Court hasn't indicated to us that they have their nose out of joint at all, and I think they were appreciative. I would expect they were appreciative that everything got done expediently. So then we fast forward, ultimately the Superior Court acts on January 5th. January 5th is when they finally acted, and we have the order from them at that point. I'm here to answer questions, so if you have questions for me... Let's get Mr. Ranjan up, and then we'll get you back on the phone. Thank you, Your Honor. Good morning, Your Honor. This is Nicholas Ranjan on behalf of the Appellee Robert Lincoln. Let me just start off with another dumb question. What more could the Commonwealth have possibly done? They could have asked Judge Shapiro for an extension. Before December 24th? I mean, and I think that's why Judge Shapiro ultimately granted our motion for a writ of execution, because it was trying to essentially interpret and faithfully apply this Court's decision in Lincoln 2, which said it lifted the stay, and frankly, it's a little bit unusual because it lifted the stay and said you have 13 days left, or if you need more time, go ask Judge Shapiro for more time. Yeah, but maybe part of the fault was ours. I was on the panel. Yes, it's true. Judge Schroeder and I were not. I know. I'll take the blame here. We thought, you know, 13 days left. We just didn't think about it, and we probably should have... We did say that, you know, you've got 13 days. If you think you need to do more, here's what you might want to do, but nonetheless, they scurried around during the holiday season and they ultimately got something that was positive from the Court of Common Pleas, technically not the correct court, but why wasn't that sufficient? Why was the Court of Common Pleas order of December 22 insufficient? Well, Your Honor, if you recall, in the last round of this case, and in fact, Judge Slover, you were in on the first round. This is, we're now in the third round, and the second round... There's not going to be a fourth round, is there? I pray not. I was appointed in 2009 to take this case by bail, and I can't tell you... It's like Jordan Dyson, Jordan Dyson. I didn't expect it to be a six-year process.  The first is, so the last round of this case, the main question was, the government, or Judge Shapiro, reinstated the appeal, non-pro-tunk, on the merits. It had to be done on the merits, because in Lincoln 1, the appeal was reinstated without that phrase, on the merits, and what happened is we went back to the Superior Court, and the government argued waiver, and the Superior Court agreed. We had to go back in Lincoln 2 and got the Rule 60, and so a critical part of the last round was that this appeal be reinstated on the merits in state court. Judge Lerner issued this order, and as the government concedes, didn't have the authority to reinstate the appeal on the merits. The Superior Court did, and it ultimately did issue an order, albeit too late, on January 5th, reinstating the appeal on the merits. And now the Superior Court's really unhappy because of a federal-state issue. Yeah, unhappy, that's correct. I mean, unhappy at me, unhappy, I suppose, at Judge Shapiro, and certainly it wasn't our intention to draw the iron. Maybe we did something wrong. Yeah, next time someone's telling you, probably the culprit was probably me. Well, us. Thank you, Your Honor. Isn't it fair that Judge Shapiro, reading her order subject to our review now, she appeared to believe herself bound to issue the writ, rather than excuse the technical noncompliance? Unless the Third Circuit says otherwise. Well, I think what Judge Shapiro did was, she was trying to interpret this Court's decision. And I don't think she felt she was necessarily, her discretion was necessarily circumscribed. I think what she was trying to do was exercise her discretion in a way that was consistent with this Court's decision. And I'll tell you that I think both parties, as well as Judge Shapiro, and maybe it was just reading between the lines. Because, again, this is a procedurally complex case with a lot of background. But I think all of us interpreted the Court's, this Court's decision in lifting the stay with only 13 days left, sort of an unusual time period, as urging immediate action or else. Because, I mean, this case has been pending for a number of years. And just to give you a little, not to get into the whole morass of the procedure, but to give you a little bit of the background that informed Judge Shapiro's decision, in this last round, she granted a conditional writ that required reinstatement of the appeal on the merits within 90 days. But she refused to stay her order pending the government's appeal to this Court. And she did so for a good reason, because under Supreme Court precedent in the habeas setting, there's a presumption in favor of release pending appeal of a petitioner. So she said, I'm not going to stay. And that last decision affirmed what she did in terms of reinstating the appeal. Correct. And then this Court reluctantly granted the stay pending an appeal. And I say reluctantly. Again, maybe this is me and all of us reading into this a little bit too much. There were only 13 days left. The Court then ordered expedited briefing. And then out comes this December 2014 opinion that says, we're lifting the stay. And as part of that appeal, I asked for an unconditional release. But this Court said, we're lifting the stay. You only have 13 days left. So against that backdrop, I think it wasn't unreasonable for Judge Shapiro to conclude that what this Court wants is quick action. And there are 13 days left. Or come to me. You didn't come to me as a tactical matter. I mean, the government in its briefs below, and in the transcripts, said, Judge Shapiro, we didn't go to you because we thought you would deny a request because you denied it before. You didn't give us a stay before. So we thought you wouldn't give us an extension now. So that's why we found this judge in the trial court over here to give us this order. He was the calendar judge? He was, I believe, the calendar judge. But there was a common pleas judge that was still active. So they didn't even go to him. And I think it's a little bit of revisionist history on their part because how they presented it below was we went to the Superior Court because we knew that was the correct court. They didn't act because of the holidays. I don't dispute that. That's probably what happened. Then we decided not to go to you, Judge Shapiro, as... But you filed something at the end of December? We did. So the deadline passed, I think five or six days after the deadline passed. We hadn't heard anything. What you did have, you hadn't heard anything from the Superior Court, but you had heard from the Court of Common Pleas. We had. And when we received that order, one, we were a little bit... We thought it was a procedural trap, frankly. I mean, we received this order that was ineffective and under Pennsylvania law. But then shortly after you filed that, four, five, six days later, you get the Superior Court now getting into the action. Why continue on with Judge Shapiro? I mean, it looks like the appeals reinstated. That's what the Lincoln II was about. Correct. And why not just be done with it? Let's reinstate the appeal. Let's go forward with the appeal. There's no waiver of his rights, which is what Lincoln II was about. Life goes on. I suppose. I mean, I hope that's... If this Court reverses and sends it back, I really hope that's what happens. Since this is all blown up in the Superior Court, the government's made statements that it believes that there needs to be an appeal to reinstate his appeal on the merits. The government being the U.S. government? No, the Commonwealth of Pennsylvania. The same office here. So what very well could happen is we could go back there. I could make my same arguments that I made years ago, which have never been disputed on the merits, and they're going to seek evidentiary hearings and delay resolution of the appeal when Mr. Lincoln is probably going to get out of prison on parole in 2019. Then you go back... That's the so-called next case. Then you do go back before Judge Shapiro and see what you can do with that if there's something that's... Look, the bottom line is reinstate the appeal. I think the Commonwealth gets that, and they did everything they possibly could to reinstate it. They can't force the Superior Court to act before December 25. Well, I mean, that's true, Your Honor. I don't hold it against them. I mean, I think they took every reasonable action they could have done. I have a professional obligation to my court. Yeah, if you could get your guy cut loose without an appeal... This is a case where it looks like both sides are trying to fulfill a professional obligation. Yeah, I mean, I was not doing anything untoward. It would be like if I had a civil case and I had a statute of limitations of defense and I said, I'm not going to lay here. If you assume that we have Shapiro's interpretation of our prior order, what's the right remedy here? I mean, should we just reverse her? Should we remand it? What's left for her to do? I think the appropriate remedy is for a remand for her to consider the government's request to modify the writ because I think, as Your Honor pointed out, she may have been under the impression that she was following this court's decision and didn't have the discretion that she may have had in entertaining the government's request to modify it. I think we have to interpret it that way. What if she says, No, I know I have discretion and I want to issue the writ unconditionally. Then you're right. We're back here. But I don't think that's something that it would be appropriate for this court to take away from. As we brief the issue, the Supreme Court has said that district courts have probably their broadest discretion in the habeas context in terms of fashioning relief. It's reflected in the transcript between her and counsel in this case at 125-135 of the Joint Appendix. I think what also motivated her decision here is a sense of finality. This thing's been going on for 12 years. We've been back and forth. The government stopped this. But this is the ultimate step. You've got to release him. It's not a question of reinstatement of appeal. I mean, it's ultimate and maybe there will never be finality because the government has said once they release him they're going to re-arrest him and re-try him. It's as easy enough to take that course of action as it is to get the appeal reinstated on the merits and decide it that way. I will say federal district courts have a tremendous amount of discretion in terms of deciding to modify or not to modify the conditions of their writs. I've looked for cases. I don't think I've seen a district judge reversed on its decision to not modify a writ. It doesn't happen a whole lot. This is an extraordinary circumstance. I mean, even you as an opposing counsel can't say that the Commonwealth didn't do all that it could have done other than possibly approach Judge Shapiro before Christmastime. Look, it's tough to say that they acted in an untoward way. They did what they could, maybe short of going back to Judge Shapiro within the 13-day period, but they certainly didn't... The bottom line was there was no effort on their part to thwart the substantive order, namely reinstate the appeal. That's correct. I'm not sure how... Well, I mean, the only I think fault to the government was not going to her initially and they've said this because they thought she would deny their request. This court in the Gibbs case, which both parties have cited, said, look, federal district courts have a lot of discretion in this context, so don't wait until... It may be strategically unwise to wait until after the deadline passes to then go ask the district court for an extension or a modification of the writ because the district court... Yeah, but maybe what they thought was on December 22 we had done enough to get us by and the Superior Court will ultimately act, which indeed it did 13 days later, 14 days later. I don't have any further questions. Anyone else? Okay, and I just would just say obviously it sounds like the panel is leaning towards remanding and our position would be that you remand it for Judge Shapiro with instructions for her to consider the government's request. There may be a need to further modify the writ or some other aspects of her writ that she would want to exercise discretion over. Possibly, instead of remanding, you just say that we probably should have given more time at that time of year and it was the writ here is vacated and absent something very significant that's not in the record to make a suggestion that the extension of time be granted. I mean, doesn't what Judge Amber just outlined have the virtue of getting things moving as quickly as possible in the Superior Court? Isn't that in everyone's interest? That's true, although I don't know if we would want the... I mean, the struggle is I don't want the writ to be vacated because that's sort of the operative thing that got us to the State Court. I mean, I guess the remedy would be... I mean, really, the order on appeal is... There's another concern that we have, and it's really the federal-state relations. Well, the Constitution is an issue. Yeah. I mean, I guess the federal-state relationship... I understand. I mean, you have habeas edits. There's an interlap here, but what Judge Shapiro was doing was, within her purview, you know, there's a determination of a Sixth Amendment violation and an interpretation of how... Well, what Judge Shapiro appeared to... I mean, I think Judge Hardiman or someone said that she was wondering, you know, to what extent there was any leeway given to her by our Court, and we could have been more clear on that. Okay. Thank you very much. Thank you. Ms. Ferrante, really anything else you want to say? Yeah, let me ask you, what do you want us to do? I think... I actually thought that, Judge... I was thinking about that, because it seems like the appropriate question at this point. I thought Judge Ambrose's suggestion makes a lot of sense, particularly because he was on the original panel, and that gives us a little more leeway here. So the suggestion by Judge Ambrose seemed prudent and seemed like probably the best course of action. Which suggestion? The suggestion at the end, I didn't write it down, but you detailed basically a remand order with instructions for the Judge, just to clarify what this panel meant originally. Did you agree it's in everyone's interest to get this moving in the Superior Court? Absolutely. I don't know why they haven't ruled yet. I had hoped they would, but in truth... They're waiting for us. I think they're waiting for you. I think they're waiting for you. And they well wait for Judge Shapiro as well. Her hands... Her writings on the matter seem to indicate that they feel their hands are tied until we issue an order in this appeal right now. That's what it looks like to me too. Does anyone have any other questions? No, the only question that Mr. Rajan said is he hoped that if the appeal was reinstated that there aren't a lot of more procedural roadblocks, but let's just get down to the merits of... I think that's what the Superior Court is trying to do. The problem is the record is not entirely clear. That's generally the appellant's burden. Instead we as appellees have suggested methods to create that record that needs to be reviewed. That's what's being discussed. I think they're doing everything they can. Are you acting pro bono? No, Your Honor. I am Chief of the Federal Litigation Unit here in Philadelphia. Thank you very much. Thanks. Thank you to both counsel. Very well done. And we'll call...